CASE No. 934.

DAVIDSON v. MOORE.

FICKLING v. SAME.

1. Testator bequeathed " to my sons, T., S. and W., in trust, for the use and benefit of my granddaughters, A., L. and B., each $10,000, when they arrive at the age of eighteen years. * * * My sons, trustees aforesaid, may, if they deem it necessary and prudent, invest the above legacies in stocks or other property for the use and benefit of my said granddaughters severally," and the rest of his estate was given to his three sons. S., who alone undertook the trust, set apart to two of the grand-

daughters, at the age of eighteen, in 1863 and January, 1865, certain notes, all of which were due to a firm composed of testator and his three sons, except one note made in 1863, and payable to a new firm formed by the sons. The notes were appraised good when so set apart, but were only partially realized. There was no written assignment, and the notes were afterwards sued, presented against bankrupt estates, proved in court, &c., in the firm name. *Held*, that the pretended investments were not payments of the legacies.

2. The amounts received upon the notes of the firm of testator and sons, should be added to the firm assets, of which one-fourth belonged to testator; and the payments made by the executor to the *cestuis que trust* should be credited upon his accounts as executor.

3. A referee's finding of fact upon the conflicting testimony of witnesses examined before him, which was overruled by the Circuit judge, sustained by this court.

4. Certain stock in chartered companies, sold by the executor, charged to him at the appraisement, there being no other proof of value.

5. Executors are not entitled to commissions for years in which they failed to make returns prior to the adoption of the general statutes in February, 1872; since then, there is no law depriving them of commissions for such neglect.

6. Executors are entitled to commissions on the final balance in their hands paid over. *Gee* v. *Hicks, Rich. Eq. Cas.* 5.

7. Decree for the legacies against this executor personally, should only be for assets which came, or should have come into his hands, exclusive of the value of the slaves emancipated.

8. The trustee having attempted to sustain such improper investment, and being antagonized by this litigation, should no longer hold his office of trustee without bond and security:

Before WALLACE, J., York, November, 1879.

These two actions were tried together, being actions against Samuel R. Moore, executor, for the payment of legacies under the will of John S. Moore, to Laura S. Springs, now Davidson, and Buena V. Springs, now Fickling.

The report of C. E. Spencer, Esq., referee, in the case of Davidson *v.* Moore, thus states the facts:

1. John S. Moore, defendant's testator, died on September 21st, 1859, leaving in force his last will and testament, which was duly admitted to probate by the Ordinary of York county on January 4th, 1860. Defendant, T. A. Moore and W. A.

Moore, the three sons of the testator, were named as executors therein, but the defendant alone qualified.

2. The said testator bequeathed to his three said sons the sum of $10,000, in trust, for the use and benefit of his granddaughter, the plaintiff, Laura B. Davidson, upon her attaining eighteen years of age, for and during her natural life, with limitations over in the event of dying without issue alive. The defendant alone undertook the execution of the trust.

3. The plaintiff, Laura B. Davidson, on October 18th, 1862, attained the age of eighteen years, and, subsequently, on September 10th, 1867, intermarried with the plaintiff, Joseph S. M. Davidson.

4. The will of the testator provided that the trustees may, if they deem it necessary and prudent, vest the above legacies in stocks or other personal property, for the use and benefit of the said granddaughters as aforesaid, referring to his three granddaughters, of whom the plaintiff, Laura B. Davidson, was one, and to each of whom he had left a similar legacy upon her, each of them, attaining the age of eighteen.

5. The entire residue of the estate, after payment of debts, was willed to testator's three sons above named, to be equally divided between them.

6. The testator died seized and possessed of a considerable real and personal estate, a statement of which, together with the value thereof at the time of his death, is hereto attached, marked *Exhibit A*. He was also, at the time of his death, the owner of one-fourth interest in the firm of J. S. Moore & Sons, composed of testator and his three sons, each of whom owned a fourth interest. A statement of the assets of the firm at that time is attached to this report, and marked *Exhibit B*.

7. The estate of the testator was never sold by the executor. He admits that he has appropriated the entire estate, however, with the exception of the negroes, (who were emancipated in 1865,) the King's Mountain Iron Company stock, (which he traded off in good faith during the war with a view to benefit the estate, without ever having realized anything upon it,) and the King's Mountain Railroad stock, (which he claims still to hold in behalf of the estate, and which he has done in good faith,

having a care to the interest of the estate, although he might have realized as much as $10 a share for several years after the war, and although he has taken the new certificate of stock from the C. and L. Railroad Company in the name of different members of his own and his brother's family.)

8. The account, as executor of the estate, is attached hereto, marked *Exhibit C;* an account of the receipts and disbursements of the survivors of J. S. Moore & Sons is also attached, marked *Exhibit D.* The settlement of the firm business has been conducted by the defendant.

9. On November 20th, 1862, defendant, with the knowledge, consent and approval of the other survivors of J. S. Moore & Sons, and with the expectation of being reimbursed at some future time out of the testator's estate, set aside from the assets of said firm the notes described in *Exhibit E,* hereto attached, in payment of the legacy of his testator to the plaintiff, Laura B. Davidson. The parties owing these notes were solvent at the time, and would, doubtless, have continued so but for the results of the war. At the time of this setting aside no money investment was practicable, though the trustees might have made the debts more secure by the individual endorsements of the survivors, or, if the others could not have been obtained, by his own endorsement. Requiring a mortgage of a debtor's real estate was entirely impracticable at the time. I have not the least doubt in my mind that, aside from involving himself personally, the arrangement to secure the legacy was the best that presented itself to defendant, and that he undertook it with the best of motives. With the legal question whether, under the will, it was a proper investment, I have nothing to do. Defendant's account, as trustee of Mrs. Davidson, is hereto attached, marked *Exhibit F.*

The bill of appraisement is only *prima facie* evidence of the amount and value of a decedent's property. While testimony was offered to show that the stock of the King's Mountain Iron Company and the King's Mountain Railroad had no marketable value at the time of testator's death, yet no real value was proved, and, as I am satisfied, there was some real value, I accept that assessed by the appraisers.

In the payments of 1860 of the testator's debts, defendant has included an item of $3181.99, being the amount of the account of Miss J. A. Springs, a granddaughter of testator and one of the legatees provided for in his will. Defendant claims that under an arrangement between testator and two certain paternal uncles of the three granddaughters, (whose father had become insolvent,) entered into in 1857, the testator undertook to support the said Miss J. A. Springs until her education should be completed, each of said uncles undertaking, at the same time, to render similar support to one of the other granddaughters. As regards the undertaking of the testator, the testimony was con-flicting, but I think the weight of the testimony fully warrants the conclusion that the testator did so undertake, and I so find. But I hold that the undertaking was discharged upon her attaining eighteen years of age in December, 1859, at which time, under the will, she became entitled to the income from her legacy, the interest on which was actually paid to her in December, 1860, out of the estate, and regularly thereafter until 1863, when the legacy was invested. Up to December, 1859, her account aggregated $1698.46, and to this extent I allow defendant credit.

In the case of Fickling et ux. *v.* Moore, the referee submitted a similar report, except as follows:

Buena V. Fickling attained the age of eighteen years March 24th, 1865, and married Jeremiah Fickling in February, 1875. On January 1st, 1865, defendant, with the knowledge, consent and approval of the other survivors of J. S. Moore & Sons, and of the members of the other firm of W. A. Moore & Co., to wit, W. A. Moore and T. A. Moore, his brothers, (who were also named as executors and trustees in the will of J. S. Moore, but who never qualified,) and with the expectation of being reimbursed at some time out of the testator's estate, set aside the notes described in *Exhibit E* 2, hereto attached, (all of which belonged to the assets of J. S. Moore & Sons, except the note of J. M. Smarr, which belonged to W. A. Moore & Co.,) in the payment of the legacies of his testator to plaintiff, Buena Fickling. The parties owing these notes were solvent at the time, except that

J. M. Smarr could hardly have been considered entirely good for a debt of $6000, on a strict property basis. All of the notes would doubtless have been realized on, however, but for results of the war. Of course, no money investment was practical in January, 1865, though the trustee might have made these claims more secure by the individual endorsement of the members of the firm, defendants, W. A. Moore and T. A. Moore, or secured by his endorsement alone in case the other could not have been obtained. *Requiring* a mortgage of a debtor's real estate was entirely impracticable at the time, as the collection of debts was stayed. The note of J. M. Smarr was given for the loan of Confederate money on May 16th, 1863, to wit, $5600, worth in good money $1458.33; and while I have no doubt that the testimony of the defendant is true, that Smarr was to pay back in good money after the war, as he (Smarr) proved to be totally insolvent, the defendant cannot ask (against his own plan of making up accounts involving Confederate currency) that the investment be recognized for more than enough to cover the value of the said Confederate currency to the firm of W. A. Moore & Co., with interest to the date of the investment, to wit, $1621.67. With the exception of the Smarr note, I am satisfied the arrangement to secure the legacy was the best that presented itself to the defendant, aside from involving himself and his brothers personally, and even in the case of that note he acted with good motives, of course, as in the other case. I have nothing to do with the legal question whether the investments were proper, within the meaning of the will. Defendant's account as trustee of Mrs. Fickling is hereto attached, marked *Exhibit F 2.*

Upon exceptions to this report, the Circuit judge filed the following decree:

These causes were tried together and came before me on exceptions by plaintiffs to the report of the referee, to whom it had been referred to take the testimony, state the accounts of the defendant, as executor under the will of J. S. Moore, deceased, and as trustees for plaintiff, and to report any special matter.

The will of the testator, John S. Moore, upon which these actions are founded, provides, *inter alia*, as follows : I will and bequeath unto Theodore A., Samuel R. and William A. Moore, in trust for my granddaughters, Amanda J. Springs, Laura B. Springs and Buena V. Springs, each $10,000, when they arrive at the age of eighteen years old, for and during their natural lives; and should either of them die, then to her issue; but if either die leaving no issue alive, then to her surviving sisters or their surviving issue forever.     *     *     *     My sons, trustees as aforesaid, may, if they deem it necessary and prudent, vest the above legacies in stocks or other property for the use and benefit of my said granddaughters severally, but the property so obtained to be held by said trustees upon and subject to the same terms and conditions aforesaid.

The testator died in 1859, and the defendant, S. R. Moore, alone qualified as executor, and assumed the trusts created under the will.   The plaintiff, Laura B. Davidson, one of the beneficiaries of this trust, attained the age of eighteen years on October 18th, 1862, and the plaintiff, Buena V. Fickling, another beneficiary, attained said age on March 24th, 1865.

The testator seems to have been possessed at the time of his death of very considerable estate, both real and personal, and largely in excess of what was necessary to provide for all the legacies mentioned in said will.   Besides he held an interest of one-fourth part in a mercantile firm conducted under the name of J. S. Moore & Sons, of which the testator and the three sons named in the will are the partners, each to the extent of one-fourth part.

No part of testator's estate was sold by the executor, and it suffered serious depreciation in consequence of the emancipation of slaves after the war and the loss of debts due.   Shortly after the plaintiff, Laura B. Davidson, reached the age of eighteen years, to wit, on October 18th, 1862, the defendant claimed to have set apart sundry notes payable to the firm of J. S. Moore & Sons, of the estimated value of $10,000, in satisfaction of her legacy, and as an investment for her use under the terms of the will. And on January 1st, 1865, sundry other notes, payable to said firm and to the firm of W. A. Moore & Co., (in which

R

testator had no interest,) of the like value, were claimed to have been set apart by the executor in satisfaction of the legacy of the plaintiff, Buena V. Fickling, and as an investment for her use under said will.

These alleged investments are attacked by plaintiffs and sought to be sustained by the defendant. The referee reports that these notes were set apart in good faith and computes the amount collected on each of the parcels of notes, and charges the defendant with the amounts actually realized upon said notes and interest as satisfaction in full of the legacies. The *corpus* realized for the plaintiff, Laura B. Davidson, from said notes is computed at $4255.69, and that realized for the plaintiff, Buena V. Fickling, from the notes set apart for her is computed at $2706.66 as of January 1st, 1865. The remaining estate of the testator in the hands of his executor, after deducting commissions, and including the allowance of sundry credits hereinafter mentioned, is reported by the referee at $29,053.72.

I cannot hold that the setting aside of these notes for the respective plaintiffs amounted to a satisfaction of the legacies; nor was it such an investment, under the will, of their respective shares as can be sustained.

It appears that neither of the beneficiaries was consulted as to the alleged investments, nor were they informed thereof, nor was any return filed stating such investment. That the notes were payable one day after date and were all over due at the time they were set apart ; that there was no endorsement on any or either of them indicating a transfer to the trust estate ; that the notes were without security and the members of the firm continued to treat the notes as partnership property long afterwards by putting them in suit and proving them against the estates of the debtors in the names of the original payees. One of the notes claimed to have been set apart for the plaintiff, Mrs. Fickling, was a note of over $6000, dated in May, 1863, and was admitted to have been in consideration of confederate currency at that time loaned. It was afterwards proved in bankruptcy by the defendant in the name of W. A. Moore & Co. against the estate of the debtor and alleged in the proof to have been worth only its value in such currency at the time it

was made. It was alleged by the defendant that at the time these notes were set apart an entry was made in a private book in defendant's possession, in which a list of notes due the firm was entered, showing an appropriation to the trust estates of the notes in question. Accepting this as true, it cannot alter the effect of the parties afterwards dealing with the notes as their own. Under this state of facts, I would find difficulty in holding that there had been such an appropriation of these notes to the trust estates as to distinctly make them out as trust property, even were I able to overcome the more serious obstacle to sustaining such an investment as one authorized by law. I am therefore compelled, both as to matters of law and fact, to hold that there had been no investment of the legacies of these plaintiffs by the defendant as trustee pursuant to the directions contained in the will.

Exception is also taken by plaintiffs to an item of credit claimed by defendant as executor in the sum of $3181.99 and interest, alleged to be a disbursement on behalf of testator's estate in payment of an account to J. S. Moore & Sons for the maintenance of Miss A. J. Springs, another of the granddaughters, prior to her attaining the age of eighteen years.

The referee concluded that the weight of testimony is in favor of sustaining this account as a proper voucher up to the time that Miss Springs reached the age of eighteen years, when her legacy vested. He allows defendant credit for $1698.46 and interest thereon from the date of the alleged payment, being that part of the account which accrued prior to her attaining the age of eighteen years. After a careful consideration of the testimony, I am compelled to differ from the referee on this point, and to disallow the credit in the account of the defendant as executor. Exception is further taken to the allowance of commissions to the defendant, both as executor of the estate of the testator and as trustee for plaintiffs. The testimony is conclusive that he filed no returns as executor, and it seemed to be a matter of question whether he ever filed an inventory of the estate of testator in the proper office. Under this state of facts the law is imperative, and the defendant's commissions, as executor, cannot be allowed. He is entitled, however, to his proper

commissions as trustee on the amount of funds actually received and appropriated to the trust estates, and to the extent of the latter the plaintiff's exceptions are overruled.

The referee omitted to charge the defendant with the appraised value of certain railroad and other stocks belonging to the testator. The subsequent appropriation of these stocks among the family of testator seems to me to forbid the view taken by the referee, and I hold that the defendant should be charged therewith. Exceptions were also taken by the plaintiffs to sundry items of credit in defendant's account as executor for notes paid in behalf of testator's estate, the allegations being that, although sundry of these notes were signed by the testator, they were given for money borrowed and put in the firm of J. S. Moore & Sons, and that their payment after testator's death should have been charged to this firm and not to the estate of testator. While there is some testimony that creates a doubt in my mind upon these points, I do not see sufficient force in it to cause me to overrule the decision of the referee allowing defendant these credits. It appears from the report of the referee that $3000 of the estate of Laura B. Davidson was invested by consent on December 13th, 1871, in a note and life policy of her husband. Also, that all the payments made by the trustee, with interest thereon to January 1st, 1879, including interest on the above $3000 to same date, amount to $6074. As this mode of accounting by the referee has not been objected to by either party, I shall follow it, though not strictly accurate. The account will then stand thus:  *.  *  *

It is, therefore, adjudged that the plaintiff, Laura B. Davidson, do recover of the defendant, Samuel R. Moore, personally and as executor of the estate of John A. Moore, deceased, the sum of $4084.92. It further appears from the report of the referee that all the payments made Buena V. Fickling by the trustee, with interest thereon to January 1st, 1879, amount to $5355.72. As this mode of accounting by the referee has not been objected to by either party, I shall follow it, though not strictly accurate. The account will then stand thus:  *  .*  *

It is, therefore, adjudged that the plaintiff, Buena V. Fickling, do recover of the defendant, Samuel R. Moore, deceased, the sum

of $2704.65. The views I entertain upon the law and facts of these cases make a further inquiry into the amount of the assets of the estate of John S. Moore, deceased, now or formerly in the hands of the defendant as executor, unnecessary.

I have herein decided all the points raised respecting this part of the case. The assets and the real estate were sufficient in amount, as I have heretofore found, to pay all debts and the legacies provided in the will. Hence I adjudge the recovery against the defendant personally and as executor. The endeavor of the trustee to sustain, as an investment, the notes received by him, his necessary antagonism growing out of this litigation, and his antagonistic attitude towards *cestuis' que trust* claims under him, without any impeachment of his integrity of purpose or good faith, make him an improper person to be .entrusted longer with the trust estates, unless he enter into bonds to secure the forthcoming of the same, as required by the provisions of the will of the testator, and the payment of the same annually to the *cestuis que trust.*

It is, therefore, adjudged and decreed that the defendant forthwith pay over to the clerk of this court the sum of $7000, as the *corpus* of the trust estate of Laura B. Davidson now in his hands; also the sum of $10,000, the *corpus* of the trust estate of Buena V. Fickling, unless he, the said defendant, do give bonds to the said clerk, each with two good sureties, one in the penal sum of $14,000, and the other in the penal sum of $20,000, conditioned for the faithful discharge of his duty as trustee of Laura B. Davidson and of Buena V. Fickling, respectively, in accordance with the provision of the will of John S. Moore, deceased. It is further adjudged and decreed that the plaintiffs, Laura B. Davidson and Buena V. Fickling, do respectively recover from the defendant, Samuel R. Moore, personally, as executor as aforesaid, their costs and disbursements in these actions, to be taxed by the clerk of this court. It is ordered that it be referred to Charles E. Spencer, Esq., the referee herein, to report a proper person in the case of each trust estate, to be appointed trustee of such estate respectively ; and that upon the appointment of such persons by this court, and their qualification as such trustees and giving bonds, as hereinbefore specified, as the condition for the

defendant to retain the management of the trust estate, the clerk of the court do pay over to such trustees the *corpus* of the estates that may have been paid over to him by the defendant in pursuance of this decree.

The defendant excepted to this decree upon the following grounds:

1. For error in holding that, both as matters of law and fact, there had been no investments of the legacies by the defendant as trustee, pursuant to the directions contained in the will.

2. For error in holding that the members of the firm of J. S. Moore & Sons continued to treat the notes as partnership property, because, in bringing suit and proving them against the estate of debtors, the names of the payees were used, though the same was done for the benefit of the plaintiffs and the trustee charged himself with all the collections made.

3. For error in holding that said notes were only entered in a "private book" in defendant's possession, when the evidence is uncontradicted that the entry was made at the date of the investments in a "firm book" open to inspection, and in utterly ignoring the positive evidence of J. A. McLean, P. J., as to the investment for Mrs. Davidson, and *Exhibit A*, filed with answer.

4. Because, if the investments were not valid, then his Honor should have decreed that the survivors of J. S. Moore & Sons be *first* refunded out of the estate of testator, the amounts, with interest, collected (on the notes set apart) and expended for the benefit of the legatees.

5. For error in excluding the credit of $1698.46 and interest (allowed by the referee in his report,) contrary to the overbearing weight of the evidence.

6. For error in charging the defendant with the appraised value of the railroad stock and iron stock.

7. For error in allowing a right in plaintiffs to object to defendant's commissions as executor.

8. For error in excluding defendant's commissions as executor on amounts *to be paid*.

9. For error in holding that the assets and the real estate in the hands of the defendant as executor, were sufficient in amount

to pay all debts and the legacies provided in the will, when the uncontradicted evidence shows to the contrary.

10. Because, *while* the balance of the estate after paying debts, as reported by the referee up to January 1st, 1879, (viz., $29,053.72,) in addition to the appraised value of the railroad and iron stocks and interest, executor's commissions and interest thereon, the item of $1698.46 and interest, only aggregate up to January 1st, 1879, $43,403.16, the three legacies and interest to said date amount to over $60,000.

11. For error in decreeing that Laura Davidson recover of the defendant $4084.72, and Buena V. Fickling $2704.66, when it appears from the referee's report and the overbearing weight of the testimony, that each is in debt to the defendant for advances of income.

12. For error in decreeing against the defendant personally, as well as executor, as to debt, costs and disbursements.

13. For error in decreeing the removal of the defendant as trustee, though his integrity and good faith are unimpeached.

14. Because the plaintiffs have realized more, both in *corpus* and income, than they could have done had the investments been postponed until the executor had paid the debts of the testator.

15. Because the decree is in conflict with law, equity and the evidence, and entails results never contemplated by the testator, and contrary to the intent and purposes of the will.

Upon these exceptions defendant appealed to this court.

*Mr. W. B. Wilson,* for appellant.

*Messrs. J. H. Rion* and *J. F. Hart,* contra.

October 18th, 1880.   The opinion of the court was delivered by

McIVER, A. J.   These cases depending upon the same principles, were heard together on Circuit, and the appeals will be considered together here.

The conclusion of the Circuit judge, that the investments of the trust funds claimed to have been made by the appellant, cannot be allowed, is so fully sustained by his reasoning that it

would be difficult for us to add anything to it. These cases differ materially from the case of Bolling *v.* Child, MS. decision filed March 5th, 1879, which has been cited by the counsel for the appellant. There the executor, who was also trustee, in pursuance of the directions of the will, had sold the whole estate and converted it into "well-secured" notes, and the court said that the executor having, as trustee, simply received the share of the *cestui que trust* "in the incidental assets in which the estate consisted, from which this share was derived, and allowed the investment to remain as it was, in notes, which both the referee and Circuit judge have found to have been then well secured, and to have become worthless only by reason of the results of the war and other causes over which the trustee had no control, and for which, therefore, he was not responsible, it is difficult to conceive of any principle of law or equity upon which the trustee could be held liable." In that case the property really given to the trustee for the benefit of the *cestui que trust* was, practically, the very notes which were in question, for the testator had directed his executor to sell his whole estate and divide the proceeds into four equal shares, to be held by the executor in trust for certain persons named. Here, however, the testator did not direct a sale of his estate, and it was not, in fact, sold, but he simply gives pecuniary legacies to the executors in trust for his granddaughters, the wives of the plaintiffs, and directs that the executors "may, if they deem it necessary and prudent, vest the above legacies in stocks or other property," and then gives the remainder of his estate to his three sons, who were also appointed executors. So that, practically, he said to his sons, "I give you all of my property, charged with the payment of my debts and these pecuniary legacies, and you may either continue debtors to my granddaughters for the amount of the legacies given to them, or, if you think it best to do so, you may invest the amount of these legacies in stocks or other property." If the executor, who alone qualified, chose, as he claims to have done, to adopt the latter alternative, his conduct in making the investment must be tested by the same rules as would apply in the case of any other trustee whose duty it was to invest trust funds. So tested, there cannot be a doubt but that these investments must be dis-

allowed. The notes in which it is claimed the investments were made were not notes constituting a part of the testator's estate, specially given for the benefit of the *cestui que trust*, as in the case of Bolling *v.* Child, and which the executor, in his capacity as trustee, simply allowed to remain in the same form in which they came into his hands. Certainly the testator never had any interest in the note of Smarr to W. A. Moore & Co., and even the notes to J. S. Moore & Sons did not constitute any part of the estate of the testator, for, upon his death, these notes became the property of the survivors of that concern, and the only claim that the estate of the testator had was against the survivors for an account. The transaction, then, simply amounted to this—that the executor, acting as trustee, purchased notes from third persons, many of which were past due and entirely unsecured, as an investment of the trust funds, and did not even take the precaution of having such notes legally transferred to him as trustee, but, on the contrary, left them in the hands and under the control of the payees, who continued to deal with them, in some respects at least, as their own property, and if disaster had overtaken the payees it might have proved a very difficult matter to rescue such notes from the creditors of the payees. Such a transaction cannot, certainly, be sustained as a proper investment of trust funds.

As to the appellant's fourth exception to the decree of the Circuit judge, we think, the investments being disallowed, the best way to make up the accounts is to treat the notes claimed to have been set aside as investments as continuing to be the property of J. S. Moore & Sons, for all of which the survivors should account, in order to ascertain the interest of the testator therein, and that such interest so ascertained should be charged to the executor as part of the assets of the testator's estate, and that any payments made to the legatees, whether such payments were made from collections on such notes, or from other sources, should be credited to the trustee in his accounts as such. The result will be that all money which may have been collected on these notes will be regarded as belonging to J. S. Moore & Sons, of which the testator's estate would only be entitled to one-fourth, and if the estate has already got the benefit of more than that

proportion of such money, its interest in the other assets of the partnership will be reduced to the extent of what the estate has already got the benefit of exceeds such one-fourth. This, it seems to us, would practically effect what we understand to be the object of that exception.

We are unable to discover any sufficient reason for overruling the finding of fact by the referee in regard to the credit of $1698.46, allowed the executor for the expense incurred in the support of Miss A. J. Springs up to the time she attained the age of eighteen years. It is true that the testimony upon this point is somewhat conflicting, but the referee, who had the witnesses before him, has reached the conclusion that the weight of the testimony was in favor of allowing the credit, and we think his conclusion should have been adopted, unless it was shown, as we do not think it has been, that his conclusion could not be sustained by the testimony. *Dewitt* v. *Atkinson*, 6 *S. C.* 140. The judgment of the Circuit Court is, in this respect, reversed, and the report of the referee, as to this matter, is confirmed.

Appellant's sixth exception cannot be sustained. The executor certainly undertook to dispose of the stock in question, and he has not accounted for the proceeds of it. He must, therefore, in the absence of any other proof as to its value, be charged with that fixed by the appraisers.

Upon the subject of the commissions claimed by the executor, there is no doubt that the Circuit judge was right in disallowing commissions on all receipts and disbursements prior to the adoption of the general statutes, upon the ground that the executor had failed to make annual returns, (*Lay* v. *Lay,* 10 *S. C.* 208,) but inasmuch as the act of 1789 was repealed by the general statutes, and the provisions enacted in lieu thereof do not contain a clause declaring that a failure to make annual returns shall work a forfeiture of the executor's commission, it is clear that the executor is entitled to commissions on all his receipts and disbursements since the adoption of the general statutes; and it is equally clear that the executor should, under the case of *Gee* v. *Hicks, Rich. Eq. Cas.* 5, be allowed commissions on the final balance. In these respects, therefore, the judgment of the Circuit Court is modified so as to conform to these views.

How the accounts will stand after these modifications, it will be for the Circuit Court to ascertain, and until that is done it is impossible to say whether the decree should be against the executor personally as well as in his representative character. If it shall appear that assets of the estate of the testator, including therein the real estate, and excluding the value of the slaves, have come or ought to have come into the hands of the executor, sufficient to enable him to pay the debts and the legacies, then the decree should be against him personally as well as in his representative character; but if the contrary appears, then the decree should be against him personally, only to the extent of the assets which have or ought to have come into his hands.

The reasons assigned by the Circuit judge for a change of trustee are quite sufficient, and in this respect the decree below is affirmed.

The cases are remanded to the Circuit Court for such further proceedings as may be necessary or proper to carry out the views herein announced.

McGOWAN, A. J., concurred.